UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREAT LAKES ENERGY COOPERATIVE,

        Plaintiff / Counter-Defendant,

                                   File No.  1:07-CV-347

v.

                                   HON. ROBERT HOLMES BELL

LOCAL 876 INTERNATIONAL
BROTHERHOOD OF ELECTRICAL
WORKERS,

        Defendant / Counter-Claimant.

_____/

## O P I N I O N

      This matter is before the Court on the parties' cross-motions for dismissal or summary judgment.[1]  This matter arises from a disagreement between the parties about an arbitration award.  The underlying dispute that was submitted to arbitration centers on the hourly rate Plaintiff Great Lakes Energy Cooperative pays to linemen who are "called-out" outside of their regular shifts.  On December 6, 2007, the Court heard oral argument on these motions.  For the reasons that follow the arbitration award will be vacated.

## I.

      Plaintiff Great Lakes Energy Cooperative is a Michigan nonprofit consumer

_____

     [1]Defendant Local 876 International Brotherhood of Electrical Workers moved to strike Plaintiff's response to Defendant's motion to dismiss and for summary judgment because Plaintiff filed its response two days late.  (Dkt. No. 16.)  On the record at the December 6, 2007, hearing the Court denied Defendant's motion to strike.

cooperative corporation.  Defendant Local 876 International Brotherhood of Electrical Workers is a labor organization under the National Labor Relations Act, 29 U.S.C. §§ 151-169.  Defendant represents Plaintiff's linemen, who construct, maintain, and repair power lines.  Plaintiff and Defendant are parties to a collective bargaining agreement ("CBA") that is effective from January 30, 2006, through January 25, 2009.

The regular shift for linemen is Monday through Friday from 7:30 a.m. to 4:00 p.m.  On a rotating basis linemen are on-call weekdays from 4:00 p.m. to 7:30 a.m. and from 4:00 p.m. Friday to 7:30 a.m. Monday.  The linemen are paid for four hours as compensation for being on-call.  If an on-call lineman is actually called-out outside of his regular shift he is paid double-time for the time he is on the call and he is paid for a minimum of two hours, even if the call is completed in less than two hours.  The dispute centers on the hourly rate paid to linemen when a call-out continues into a lineman's regular shift.  For example, a lineman might receive a call-out at 5:00 a.m. that is not completed until 9:30 a.m.  Assuming the lineman's regular shift begins at 7:30 a.m., Plaintiff and Defendant agree that from 5:00 a.m. to 7:30 a.m. the lineman is to be paid double-time.  The parties disagree as to the rate to be paid from 7:30 a.m. to 9:30 a.m.  Plaintiff contends that in such a situation a lineman should be paid his regular hourly rate from 7:30 a.m. to 9:30 a.m., while Defendant contends that in such a situation a lineman should be paid double-time from 7:30 a.m. to 9:30 a.m., when the call-out was completed.

Defendant filed a grievance on behalf of Gregg Capelin, and other similarly situated linemen, who had been paid their regularly hour rate for the portion of call-outs that continued into their regular shifts after January 30, 2006. (Dkt. No. 1, Compl., Ex. 2, Arbitration Award 3.) The grievance process did not resolve the issue to Defendant's satisfaction, so Defendant sought to arbitrate the issue pursuant to article XIX of the CBA, which provides for the arbitration of disputes under the CBA.

A hearing was held before the arbitrator, Deborah M. Brodsky, on November 7, 2006. On January 31, 2007, the arbitrator issued her decision. The arbitrator determined that:

> Based on the above analysis and a careful examination of the record as a whole, she determines that the parties never reached a meeting of the minds regarding the subject pre-shift call out situation that extends into a regularly scheduled shift. However, the Union has sufficiently shown that it understood the negotiations and the Company's actions (prior to the Company's pay treatment of the employees who had the grievance filed on their behalf) to indicate that the Company had agreed to the Union's interpretation. On the other hand, the Company asserted that it had not agreed with the IBEW's interpretation and conducted itself as though it believed that the Union was somehow aware of that fact (prior to the subject grievances having been filed). There was no true meeting of the minds regarding this issue.
>
> The Company, however, is somewhat culpable in this Arbitrator's view, because it led the Union down the "primrose path" when it could have easily clarified this situation in the contract language or not walked away from the bargaining table until it knew that the Union "was on the same page" as the Company. . . . The Arbitrator therefore hereby directs the Company to pay all affected linemen from the January 30, 2006 pay period until the pay period of the issuance of this decision, the double time pay for call out work that began pre-shift and continued into such linemen's regular shift. The Union and the Company are hereby directed to again negotiate the subject call out language and reach a true meeting of the minds regarding the subject issue.

3

> This new understanding shall be signed off and  appended to the current contract to govern such situations for the remainder of the current contract term.

(Arbitration Award 12-13 (footnotes omitted).)  Based on her findings, the arbitrator made the following award:

> Pursuant to the above findings, the subject dispute is remanded to the parties to reach a full meeting of the minds regarding the situation as to how linemen are to be paid for the period of time that pre-shift call out work extends into their regularly scheduled shift.  Based on the determination reached in the "Discussion and Findings" section of this opinion, the Arbitrator has ruled that that [*sic*] the Employer is responsible to pay affected linemen for such disputed hours at the double time rate for all disputed work between the January 30, 2006 pay period and the pay period that this opinion and award is issued.  Payment for this partial remedy shall be made as soon as possible, but within 6 weeks of the issuance of this award.  This stop-gap remedy is based on the unique facts and circumstances of this case.  Subsequent disputed work will be governed by the parties' clarified agreement.

> Since neither party totally prevailed from this award, and conversely, there is no one loser on the merits of this arbitration, the arbitrator's fees and expenses shall be shared equally between the parties.

(*Id.* at 13 (footnotes omitted).)

Plaintiff filed this lawsuit on April 5, 2007, asking the Court to vacate the arbitration award.  On April 12, 2007, Defendant filed a counter-complaint asking the Court to modify the arbitration award; vacate the arbitration award and remand for a new hearing; or remand this matter back to the same arbitrator, to permit the arbitrator to issue a remedy consistent with her factual findings.  Both parties bring their respective actions pursuant to § 301 of the Labor Management Relations Act, 29 U.S.C. § 185.  (Compl. ¶¶ 4-5; Dkt. No. 3, Counter-Compl. ¶ 3.)

## II.

Both parties move to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and for summary judgment under Rule 56.  Each party asks the Court to dismiss the opposing party's claim for failing to state a claim upon which relief can be granted under Rule 12(b)(6).

### A.    Rule 12(b)(6) Standard

Rule 12(b)(6) enables the court to dismiss a complaint for "failure to state a claim upon which relief can be granted . . . ." Fed. R. Civ. P. 12(b)(6).  Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,' *Conley v. Gibson*, 355 U.S. 41, 47 (1957)." *Bell Atl. Corp. v. Twombly*, 550 U.S.--,   127 S. Ct. 1955, 1964 (2007) (alteration in *Twombly*).  "'[A] Rule 12(b)(6) motion should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (quoting *Ricco v. Potter*, 377 F.3d 599, 602 (6th Cir. 2004)).  The court must construe the complaint in the light most  favorable to the non-moving party, accept all well-pleaded allegations as true, and draw all reasonable inferences in favor of the non-moving party.  *Id.*;   *Amini v. Oberlin Coll.*, 259 F.3d 493, 497 (6th Cir. 2001).  In considering a Rule 12(b)(6) motion the Court is generally limited to the complaint and the exhibits attached to the complaint.  *Amini*, 259 F.3d at 502.

**B.      Authority of the Court to Grant the Relief Sought by Plaintiff and Defendant**

Both parties contend that the opposing party's complaint fails to state a claim upon which relief could be granted because the opposing party's complaint seeks relief that the Court does not have authority to grant. Plaintiff seeks the following relief in its complaint:

> [v]acate the portion of the Arbitrator's Opinion and Award Ordering the parties to bargain and awarding double time pay for all call out hours worked . . . .

(Compl. 6.) Defendant contends Plaintiff's complaint should be dismissed under Rule 12(b)(6) because, in Defendant's view, the Court lacks authority to vacate a labor arbitration award without remanding the dispute to the arbitrator. Defendant seeks the following relief in its counter-complaint:

> vacate the arbitration award and remand for a new hearing. In the alternative, the Union requests that this Honorable Court enter an order vacating the arbitration award and remanding the matter back to Arbitrator Brodsky to issue a remedy for the Union consistent with her stated factual findings and/or this Honorable Court vacate the award and grant the relief requested by the Union in light of the factual findings as set forth in Arbitrator Brodsky's Discussion and Findings.

(Counter-Compl. 6.) Plaintiff contends Defendant's counter-complaint should be dismissed under Rule 12(b)(6) because, in Plaintiff's view, the Court lacks authority to grant any relief beyond vacating the labor arbitration award.

The relief sought by Plaintiff and Defendant can be distilled into three categories. First, Plaintiff asks the Court to vacate the labor arbitration award and take no further action. Second, Defendant asks the Court to vacate the labor arbitration award and remand the

dispute to enable the arbitrator to conduct a new hearing or to modify the remedy.  Third, Defendant asks the Court to vacate the labor arbitration award and to modify the remedy set forth in the award based on the arbitrator's factual findings.

### 1.      Vacatur Without Further Action

Defendant contends that if the Court vacates the labor arbitration award then the Court must remand the case for further arbitration proceedings.  Defendant bases this contention on the following sentence from *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504 (2001) (per curiam): "Even when the arbitrator's award may properly be vacated, the appropriate remedy is to remand the case for further arbitration proceedings." 532 U.S. at 511 (citing *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 40 n.10 (1987)).  Neither the Supreme Court nor the Sixth Circuit have expounded upon the import of the foregoing sentence from *Garvey*.

In *Garvey* the Supreme Court reversed a Ninth Circuit decision that had vacated an arbitration award and that then went on to resolve the merits of the parties' dispute based on the Ninth Circuit's assessment of the record that had been before the arbitrator.  *Id.* at 507-08.  In this context the Court does not read the Supreme Court's use of "appropriate" in the above quoted sentence to mean "only."  This is further supported by the sentence that precedes the above quoted sentence from *Garvey*: "But again, established law ordinarily precludes a court from resolving the merits of the parties' dispute on the basis of its own factual determinations, no matter how erroneous the arbitrator's decision." *Id.* at 511 (citing

*Misco*, 484 U.S. at 40 n.10, and *United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564, 568 (1960)).  This sentence indicates that the Supreme Court's use of "appropriate" was to emphasize the impropriety of the Ninth Circuit having made its own factual determinations and then having resolved the merits based on those factual determinations, rather than to indicate that vacatur followed by remand was the only permissible resolution.  Moreover, earlier in the *Garvey* opinion the Supreme Court stated that in the rare instance where vacatur is appropriate, "the court should 'simply vacate the award, thus leaving open the possibility of further proceedings if they are permitted under the terms of the agreement.'" *Garvey*, 532 U.S. at 510 (quoting  *Misco*, 484 U.S. at 40 n.10)).  In *Garvey* the Supreme Court in describing the appropriate action for a court to take after vacating an arbitration award repeatedly referenced footnote ten in the *Misco* decision.  *Garvey*, 532 U.S. at 510-11.  In footnote ten of *Misco* the Supreme Court stated:

> Even in the very rare instances when an arbitrator's procedural aberrations rise to the level of affirmative misconduct, as a rule the court must not foreclose further proceedings by settling the merits according to its own judgment of the appropriate result, since this step would improperly substitute a judicial determination for the arbitrator's decision that the parties bargained for in the collective-bargaining agreement.  Instead, the court should simply vacate the award, thus leaving open the possibility of further proceedings if they are permitted under the terms of the agreement.  The court also has the authority to remand for further proceedings when this step seems appropriate.  *See, e. g.*, *Amalgamated Food & Allied Workers Union, Local 56 v. Great A&P Tea Co.*, 415 F. 2d 185 (CA3 1969) (vacating and remanding to the arbitrators for decision after finding that the arbitrators declined to arbitrate the issues submitted).  *See also* 9 U. S. C. § 10(e) ("Where an award is vacated and the time within which the agreement required the award to be made has not expired the court may, in its discretion, direct a rehearing by the arbitrators").

*Misco*, 484 U.S. at 40 n.10.  When the entire discussion of remedies in *Garvey* is read in conjunction with *Misco*, it is clear that a federal court may vacate a labor arbitration award without taking further action, such as remanding the dispute to the arbitrator.

Defendant's Rule 12(b)(6) motion is premised on the Court lacking authority to grant the relief sought by Plaintiff, i.e., vacatur of the arbitration award without further action.  As the foregoing analysis of *Garvey* and *Misco* makes clear, a federal court may vacate an arbitration award without taking further action.  When Plaintiff's complaint is construed in the light most  favorable to Plaintiff, Plaintiff's allegations would support vacatur of the arbitration award without further action.  As Plaintiff's complaint states a claim upon which relief could be granted, Defendant's Rule 12(b)(6) motion is denied.

### 2.    Vacatur with Remand to the Arbitrator

Defendant's counter-complaint asks the Court to either remand for a new hearing or to remand for the arbitrator to issue a remedy consistent with the factual findings in the arbitration award.  "A remand is proper . . . under the federal law of labor arbitration contracts, to clarify an ambiguous award or to require the arbitrator to address an issue submitted to him but not resolved by the award."  *Indus. Mut. Ass'n. v. Amalgamated Workers, Local Union No. 383*, 725 F.2d 406, 413 n.3 (6th Cir. 1984) (citing *La Vale Plaza, Inc., v. R.S. Noonan, Inc.*, 378 F.2d 569 (3d Cir. 1967), and *Grand Rapids Die Casting Corp. v. Local Union No. 159, UAW*, 684 F.2d 413, 416 (6th Cir. 1982)).  Defendant contends that the arbitration award is ambiguous because the arbitrator found a breach of

the CBA but only awarded damages for one year and then ordered the parties to negotiate. Defendant's counter-complaint does not explicitly describe the arbitration award as ambiguous; however, when read in the light most favorable to Defendant, the counter-complaint does allege ambiguity based on purported inconsistencies between the arbitrator's findings of fact and remedy.   (Counter-Compl. ¶¶ 15, 17.)   As Defendant's counter-complaint alleges that the arbitration award is ambiguous, to the extent that Defendant seeks remand to the arbitrator the counter-complaint states a claim upon which relief could be granted.

### 3.   Modification of the Arbitration Award

Defendant's counter-complaint, in the alternative, asks the Court to modify the remedy set forth in the award based on the arbitrator's factual findings.  Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, "empowers the federal courts to fashion rules of federal common law to govern '[s]uits for violation of contracts between an employer and a labor organization' under the federal labor laws."  *Misco*, 484 U.S. at 41 (quoting *Textile Workers Union of Am. v. Lincoln Mills of Ala.*, 353 U.S. 448 (1957)). Although the Federal Arbitration Act ("FAA") does not "apply to contracts of employment of . . . workers engaged in foreign or interstate commerce," 9 U. S. C. § 1,  federal courts have often looked to the FAA for guidance in fashioning the federal common law that governs the modification of labor arbitration awards.  *Misco*, 484 U.S. at 41 & n.9;  *Int'l Bhd. of Teamsters, Local 519 v. United Parcel Serv., Inc.*, 335 F.3d 497, 503 n.2 (6th Cir.

2003).  Section 11 of the FAA sets forth the following framework for the modification of

arbitration awards:

> In either of the following cases the United States court in and for the district
> wherein the award was made may make an order modifying or correcting the
> award upon the application of any party to the arbitration--
>> (a) Where there was an evident material miscalculation of figures or an
>> evident material mistake in the description of any person, thing, or
>> property referred to in the award.
>> (b) Where the arbitrators have awarded upon a matter not submitted to
>> them, unless it is a matter not affecting the merits of the decision upon
>> the matter submitted.
>> (c) Where the award is imperfect in matter of form not affecting the
>> merits of the controversy.
> The order may modify and correct the award, so as to effect the intent thereof
> and promote justice between the parties.

9 U.S.C. § 11.

Defendant's counter-complaint does not explicitly identify the modification sought.

Defendant's brief in support of its motion for summary judgment indicates that Defendant

seeks to have the Court delete the negotiation language from the arbitration award and

require Plaintiff to pay double-time for call-outs that extend into regular shifts for the

entirety of the current CBA.  (Dkt. No. 10, Def.'s Br. in Supp. 9.)  Defendant never

explicitly specifies the subsection of § 11 of the FAA under which it is seeking this

modification; however, Defendant uses language consistent with § 11(c).  (*Id.*)  Defendant

contends that the arbitrator found that Plaintiff had breached the CBA and that the remedy

awarded by the arbitrator is inconsistent with this finding to the extent it requires the parties

to negotiate.  If the arbitrator found a breach of the CBA, but provided a remedy that only

covered part of the duration of the CBA, then a modification could be permissible under § 11(c).  When Defendant's counter-complaint is read in the light most favorable to Defendant, a modification of the arbitration award under § 11(c) would be permissible.

As Defendant's counter-complaint alleges inconsistencies between the arbitrator's findings of fact and remedy, to the extent that the counter-complaint seeks a modification of the arbitration award the counter-complaint states a claim upon which relief could be granted.  As Defendant's counter-complaint states claims upon which relief could be granted as to either modification or vacatur with remand, Plaintiff's Rule 12(b)(6) motion is denied.

## III.

### A.    Summary Judgment Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  In evaluating a motion for summary judgment the court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  If the defendant carries its burden of showing there is an absence of evidence to support a claim, then the plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986).

In considering a motion for summary judgment, the court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. *Minges Creek, L.L.C. v. Royal Ins. Co. of Am.*, 442 F.3d 953, 955-56 (6th Cir. 2006) (citing *Matsushita*, 475 U.S. at 587). Nevertheless, the mere existence of a scintilla of evidence in support of the plaintiff's position is not sufficient to create a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for the plaintiff. *Id.*; *see generally*, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476-80 (6th Cir. 1989).

## B.    "Arguably construing or applying"

Judicial review of a labor arbitration award pursuant to a collective bargaining agreement "is very limited." *Garvey*, 532 U.S. at 509. A federal court reviewing a labor arbitration award is not "authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract." *Misco*, 484 U.S. at 36. "Because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept." *Id.* at 37-38. "'[O]nly when the arbitrator strays from interpretation and application,' . . . does he enter the forbidden world of 'effectively dispens[ing] his own brand of industrial justice,' making the arbitrator's decision 'unenforceable.'" *Mich. Family Res., Inc. v. SEIU Local 517M*, 475 F.3d 746, 752 (6th Cir. 2007) (en banc) (quoting *Garvey*, 532 U.S. at 509). In *Michigan*

13

*Family Resources* the Sixth Circuit "refined the scope of judicial review over labor-arbitration awards," and limited the scope of judicial review to "the questions of 'procedural aberration' outlined by the Supreme Court in" *Misco* and *Garvey.  Truck Drivers Local No. 164, Int'l Bhd. of Teamsters v. Allied Waste Sys.*, -- F.3d --, 2008 WL 50090, at *4, 2008 U.S. App. LEXIS 87, at *12,  (6th Cir. 2008) (citing *Mich. Family Res.*, 475 F.3d at 753).  The three questions of procedural aberration ask:

> Did the arbitrator act "outside his authority" by resolving a dispute not committed to arbitration?  Did the arbitrator commit fraud, have a conflict of interest or otherwise act dishonestly in issuing the award?  And in resolving any legal or factual disputes in the case, was the arbitrator "arguably construing or applying the contract"?  So long as the arbitrator does not offend any of these requirements, the request for judicial intervention should be resisted even though the arbitrator made "serious," "improvident" or "silly" errors in resolving the merits of the dispute.

*Mich. Family Res.*, 475 F.3d at 753.  The parties' contentions focus on the third inquiry, whether the arbitrator was "arguably construing or applying the contract."

Article V section 5 of the CBA sets forth how the call-out system will be administered, how linemen will be compensated for being on-call, and how linemen will be compensated for call-outs.  After identifying the question before her, the arbitrator extensively reviewed the bargaining history of article V section 5 from the negotiations during December 2005 and January 2006 that lead to the current CBA.  (Arbitration Award 1-4.)  Two primary changes were made to the call-out system during those negotiations.  First, the compensation for being on-call was reduced from eight to four hours of regular pay.  (*Id.* at 7;  *see also* Dkt. No. 1, Compl., Ex. 1, CBA, art. V, § 5.)  Second, the prior

14

CBA did not expressly address the compensation for a call-out, though Plaintiff's practice had been to pay linemen time and one-half for time worked during a call-out. (Arbitration Award 7.) The current CBA expressly set the pay rate for call-outs at double-time. (*Id.* at 2-3, 7; *see also* CBA, art. V, § 5.) As to the compensation for call-outs that continued into a regular shift under the prior CBA the arbitrator noted that the practice was that "[i]f the call out began before their regular shift and continued into their regular shift, the linemen only received straight time pay for those hours that overlapped into their regular shift." (Arbitration Award 1.)

The arbitrator found the following language from the article V section 5 central to the dispute:

> Effective with the pay period beginning January 30, 2006, **in the event a line department employee is called out, he will be paid double his regular hourly rate** with a minimum of two hours of double time pay in addition to the applicable on call pay . . . [*sic*]

(*Id.* at 7 (quoting CBA, art. V, § 5) (emphasis in the arbitration award).) The arbitrator noted that the dispute as to whether the foregoing language requires double-time pay for the portion of a call-out that continues into a regular shift stems from the absence of a definition of "call-out" in the CBA. (*Id.*) The arbitrator then discussed the competing testimony of the representatives of Plaintiff and Defendant who had participated in the negotiations. Based on the arbitrator's assessment of this testimony the arbitrator concluded that a representative of Defendant had inquired about the pay rate for a call-out that continued into a regular shift and that Defendant understood the answer given by the representative of

Plaintiff to be that double-time would be paid for the portion of a call-out that extended into a lineman's regular shift. (*Id.* at 9-10.) The arbitrator then considered whether the question before her could be analogized to the scenarios described in the February 2, 2006, memorandum drafted by Jennifer Wilson, Plaintiff's Human Resources Director. (Arbitration Award, 10-11; Arbitration Award, App. A, Feb. 2 Memo. from Jennifer Wilson.) The February 2 memorandum describes how the new call-out provision will apply in three scenarios, but does not address the question of a call-out that continues into a lineman's regular shift. The arbitrator then rejected Plaintiff's contention that it had told Defendant in the course of the negotiations for the current CBA that all pay practices from the prior CBA would continue. (Arbitration Award 11-12.) Lastly, the arbitrator reasoned that Plaintiff was the drafter of the CBA and that because article V section 5 was ambiguous it should be construed against the drafter. (*Id.* at 12.) The arbitrator then concluded "that the parties never reached a meeting of the minds regarding the subject pre-shift call out situation that extends into a regularly scheduled shift." (*Id.*)

After finding that there had not been a "meeting of the minds," the arbitrator went on to find that Plaintiff was "somewhat culpable" because in the arbitrator's view Plaintiff "could have easily clarified" the situation regarding the pay rate for call-outs that continued into a lineman's regular shift. (*Id.*) Based on that finding, the arbitrator directed the parties to pay double-time for call-outs that continued into a regular shift for the first year of the current CBA, but then directed the parties to negotiate regarding how the issue would be addressed for the remainder of the current CBA. (*Id.* at 12-13.)

16

A "meeting of the minds" in the context of a contract means that the parties "agree on the same terms, conditions, and subject matter." *Black's Law Dictionary* 1004 (8th ed. 2004). *See also Detroit Radiant Prods. Co. v. BSH Home Appliances Corp.*, 473 F.3d 623, 630 (6th Cir. 2007) ("[T]he key inquiry is whether the draft Supplier Agreement was understood by the parties to memorialize the terms of their contract. Yet [the party seeking to enforce the draft Supplier Agreement] presents no evidence that such a meeting of the minds took place."). If there was not a "meeting of the minds" as to how the contract would apply to a particular issue, then the contract does not reach that particular issue. *E.g.*, *Gage Prods. Co. v. Henkel Corp.*, 393 F.3d 629, 637-39 (6th Cir. 2004). The arbitrator's conclusion that there had not been a "meeting of the minds" as to the pay rate for call-outs that continued into a lineman's regular shift necessarily meant that the current CBA does not specify the pay rate in such situations.

After having found that the current CBA does not reach the question of the pay rate for call-outs that continued into a lineman's regular shift, the arbitrator could not have been "arguably construing or applying" the current CBA in making the award of back pay for the prior year and then directing the parties to "again negotiate." If the current CBA did not reach a particular question, then there was nothing for the arbitrator to construe or apply. Additionally, the arbitrator's remedy implicitly acknowledges that the current CBA did not reach the question of the pay rate for call-outs that continued into a lineman's regular shift. If the CBA resolved that issue then that resolution, whatever it might be, would apply for

the entire term of the CBA, January 30, 2006, through January 25, 2009; however, the arbitrator only awarded back pay for the period of January 30, 2006, through January 31, 2007.  (Arbitration Award 13.)  Moreover, the arbitrator directed the parties to "again negotiate," but it is conceptually inconsistent to conclude that a binding agreement between the parties resolves an issue and to order the parties to negotiate the issue.  To do so voids the prior agreement reached by the parties.

While the Court must enforce  an arbitration award if the arbitrator made "'serious,' 'improvident' or 'silly' errors in resolving the merits of the dispute[,]" *Mich. Family Res.*, 475 F.3d at 753, in this case the arbitrator's error cannot be placed in one of those categories. As the arbitrator made an award on an issue that the arbitrator had concluded the CBA does not reach, the arbitrator strayed "from interpretation and application" and entered "the forbidden world of 'effectively dispens[ing] [her] own brand of industrial justice . . . .'" *Id.* at 752 (quoting *Garvey*, 532 U.S. at 509) (first alteration in *Michigan Family Resources*).  In so doing the arbitrator made her decision "'unenforceable.'" *Id.* (quoting *Garvey*, 532 U.S. at 509).

If the arbitrator merely "chose the wrong path in justifying the award," then this Court would be without a warrant to vacate the arbitration award. *Id.* at 755.  For example, if the arbitrator had provided the same written decision but then ordered Plaintiff to pay double-time for call-outs that continue into a lineman's regular shift for the entire term of the current CBA, the Court could conclude that the arbitrator did not intend "meeting of the

18

minds" to have its traditional legal meaning.   In contrast to that counterfactual, the arbitrator's award makes clear that she intended "meeting of the minds" to have its traditional legal meaning because by only awarding double-time pay for one year and by directing the parties to again negotiate she acknowledged that the CBA does not address whether linemen are to be paid double-time for call-outs that continue into their regular shifts.

Lastly, the Court must consider the admonition in *Michigan Family Resources* that: "in most cases, it will suffice to enforce the award that the arbitrator appeared to be engaged in interpretation, and if there is doubt we will presume that the arbitrator was doing just that." *Mich. Family Res.*, 475 F.3d at 753.  *Accord Truck Drivers Local No. 164*, 2008 WL 50090, at *6, 2008 U.S. App. LEXIS 87, at *16.  The arbitrator appeared to be engaged in interpretation in the first eleven pages of her decision, but after finding on page twelve that "the parties never reached a meeting of the minds regarding the subject pre-shift call out situation that extends into a regularly scheduled shift[,]" (Arbitration Award 12),  the arbitration does not appear to be engaged in interpretation, and neither party makes a contention to the contrary.  Plaintiff acknowledged that the arbitration award should be vacated as follows:

> This is the rare case in which the parties agree on the fundamental issue.  In its Complaint, [Plaintiff] alleged that the arbitrator who issued the labor arbitration award in a dispute between [Plaintiff] and [Defendant] exceeded her authority under the arbitration provision in the parties' [CBA]; therefore, [Plaintiff] asks that the award be vacated. [Defendant] filed a Counter-Complaint, also alleging that the arbitrator exceeded her authority,

and also asking this Court to vacate the arbitration award.  Thus, at the very
least, this litigation should result in vacatur of the arbitration award at issue.

(Dkt. No. 7, Pl.'s Br. in Supp. 1-2.  *See also* Dkt. No. 14, Pl.'s Reply in Supp. 2.)  Defendant

acknowledged that the arbitration award should be vacated as follows:

> Both parties contend that the arbitrator exceeded her authority in issuing an
> award that fails to derive its essence from the collective bargaining agreement.
> However, any agreement between the parties ends at this point.  The parties
> disagree on the underlying justifications for vacating the arbitration award.

(Def.'s Br. in Supp. 1.  *See also* Dkt. No. 8, Def.'s Resp. in Opp'n 1-2.)   These

acknowledgments do not give the Court authority to vacate the arbitration award as vacatur

must still be premised on the arbitrator having failed to "arguably construe or apply the

contract."  However, given that the Court's analysis of the arbitration award yielded the

conclusion that the arbitrator was dispensing her own brand of industrial justice and that

neither party to the arbitration now contends that the arbitrator was  "arguably construing

or applying the contract," the presumption that the arbitrator was engaged in interpretation

is inapplicable.

As the Court has determined that this arbitration award is the rare instance in which

an arbitration award must be vacated, the Court must determine what additional action is

appropriate.  Defendant asks the Court to remand this case to the arbitrator to permit the

arbitrator to clarify the award.  A remand to the arbitrator would be proper if on remand the

arbitrator could clarify an ambiguous award.  *Indus. Mut. Ass'n*, 725 F.2d at 413 n.3.  The

arbitration award is not ambiguous; rather, as the Court's foregoing analysis explained, the arbitrator dispensed her own brand of industrial justice. Therefore, remand to the arbitrator would be improper. In the alternative, Defendant asks the Court to modify the arbitration award. Defendant seeks this modification under § 11(c) of the FAA, 9 U.S.C. § 11(c). *See supra* Part II.B.3. Section 11(c) permits the Court to modify an arbitration award when the award is "imperfect in matter of form not affecting the merits of the controversy." 9 U.S.C. § 11(c). Modifying the arbitration award to specify whether for the entirety of the current CBA linemen are to be paid double-time for the portion of a call-out that continues into their regular shift would affect the merits of the controversy as the dispute between the parties is that very question. *See NCR Corp. v. Sac-Co., Inc.*, 43 F.3d 1076, 1080-81 (6th Cir. 1995). Thus, modifying the arbitration award would be improper. The remaining option is for the Court to vacate the arbitration award without taking further action. As the Court's earlier analysis made clear vacatur without further action is clearly permissible. *Misco*, 484 U.S. at 40 n.10; *see supra* Part II.B.1.

## IV.

Although *Michigan Family Resources* set forth a highly deferential standard of review, the Court cannot say that the arbitrator was "arguably construing or applying" the CBA when she issued the January 31, 2007, arbitration award. Rather, a review of the January 31, 2007, arbitration award in consideration of the standard set forth in *Michigan Family Resources* permits only the conclusion that the arbitrator was dispensing her own

21

brand of industrial justice, and so her decision must be vacated.  An order will be entered

consistent with this opinion.


Date:    _____February 1, 2008_____        /s/ Robert Holmes Bell_____
                                              ROBERT HOLMES BELL
                                              CHIEF UNITED STATES DISTRICT JUDGE